## STATE VS. LINCOLN.

In an indictment for murder, the surname of the person killed was spelled in three different ways, to wit: "Giddings," "Gidings" and "Gidines," the christian name being the same in every case. *Held,* that the variance was not sufficient

ground for an arrest of judgment, the second and third forms being each *idem sonans* with the first, within the decisions upon that subject.

To sustain an indictment for murder, it must be shown that the christian name of the person killed, as given in the indictment, was his true name, or one by which he was to a considerable extent called and known among those who were acquainted with him.

Where all the witnessess agreed that they never knew the deceased to be called by the name alleged in the indictment, but two of them, without professing to know the real name, testified in substance that they supposed it to be as alleged, from their recollection of certain writings which they had seen some time before : *Held*, that it was error for the court to so instruct the jury as to leave them to think that they could convict upon such evidence, by stating that "'if they found from the evidence that the deceased was known by several different christian names, and was described by one of these in the indictment, and there was proof of the name as laid, it was sufficient."

APPEAL from the Circuit Court for *Jackson* County.

The case is stated by the court.

*S. U. Pinney*, for the defense.

*The Attorney General*, for the state, cited R. S., ch. 164, secs. 20 and 21 ; Wharton's Am. Crim. Law, §§ 257, 597, 622, 3184 ; *State v. France*, 1 Overt. (Tenn.), 434 ; *State v. Gardiner*, Wright (Ohio), 399 ; *U. S. v. Hinman*, 1 Bald., 292.

*By the Court*, PAINE, J.    The defendant was convicted of manslaughter, and the case comes here upon exceptions taken on the trial and after verdict.    The indictment was for murder, and in it the name of the deceased is spelled in three different ways.    In one place he is called "Sylvester Giddings," in another "Sylvester Gidings," and in another "Sylvester Gidines."    It was urged that the judgment should be arrested for this reason.    But we are inclined to think that with the three forms of spelling the names are still to be regarded as *idem sonans*, within the decisions upon that question.    They would all ordinarily be pronounced in such a way that it would require a nice ear to detect a difference.    But there was proof introduced to the effect that the name of the deceased was Jack Giddings and not Sylvester.    And upon this the prisoner asked the court to instruct the jury " that they must find from the

evidence that the name of the person killed was Sylvester Giddings, as charged in the indictment, or that he was generally known by that name, and if they fail to find these facts, they must acquit the defendant;" and also "that if the jury find from the evidence that the name of the person killed was Festus Giddings or Jack Giddings, and that he was generally known by either of these names, and not by the name of Sylvester Giddings, they must find the defendant not guilty." These instructions the court refused fully to give, but did instruct "that the name of the deceased must be proved as laid in the indictment, or the variance would be fatal; but that if they found from the evidence that the deceased was known by several different christian names, and that he was described by one of these names in the indictment, and there was proof of the name as laid, it was sufficient, though there was also proof of the other names by which he was also known."

We think this refusal and instruction, considered with reference to the proof before the jury, erroneous. There was no witness for the prosecution who had testified either that the name of the deceased was Sylvester Giddings, or that he was generally known by that name. Hall, the first witness, testified that the deceased had worked for him three years, that he was generally known by the name of Jack Giddings, but that he had seen him write his name several times, and he "thought" he wrote it "Sylvester Giddings." Crawford, also a witness for the prosecution, testified that he knew "Jack Giddings, and never knew him by any other name." Brockway, for the prosecution, testified that the deceased was "generally known by the name of Jack Giddings," but that "eleven or twelve years before he had received an order from the deceased which he *thought* was signed by the name of Sylvester or Sylvestus." He depended entirely upon his recollection. Such being the testimony for the prosecution, the defendant introduced quite a number of witnesses, some of whom had known the deceased for many years, who testified positively that his real name

was " Festus Giddings," and who produced notes executed by the deceased by that name. They also testified that he was generally known by the name of Jack Giddings, and that they had never known or heard him called by the name of Sylvester.

As applicable to such evidence, the refusal of the court to give the instructions asked by the prisoner, and the instruction actually given, seem equivalent to telling the jury that although they should find that the real name of the deceased was Festus, and although they should find that he was never generally known by the name of Sylvester, they might still convict the prisoner, if they should be satisfied that the witnesses Hall and Brockway had supposed the name of the deceased to be Sylvester, their supposition being founded, however, upon an uncertain recollection of having seen him so write it. Such we do not think to be the law. Such a mistaken supposition of one or two persons does not constitute such a "knowing" of a party as authorizes his description according to such mistake in an indictment. If the alleged name be not his true name, it must be one by which he has to a considerable extent been called and known among those who are acquainted with him. It is true, as the judge below suggested, that a man may have several christian names by which he is generally known. And in such case it might be sufficient to describe him by either, though perhaps not the one by which he was most commonly called. But where all the witnesses agree that they had never known the deceased to be called by the name alleged at all, and there are only two witnesses who, without professing to know the real name, testify, in substance, that they suppose it to be as alleged, from their recollection of certain writings which they had seen some time before, that cannot be said to constitute any general knowledge of the party by that name. And the jury ought not to be so instructed as to leave them to think that they could convict upon such evidence.

The instruction asked by the prisoner was correct, and should have been given. That required the jury to find that if Sylvester was not the real name of the deceased, at least he was generally known by that name. This does not imply that he might not also have been generally known by other names, but only that he must have been generally known by that. This the court refused, and told the jury it was sufficient if a man was described by any name by which he was " known ;" thus leaving them to infer that if one or two persons had, by misrecollection of a writing or misunderstanding of a name, obtained an erroneous impression as to the name of a person, that would, nevertheless, be sufficient to sustain an indictment, describing such person according to such mistake.

It is true, the judge afterwards said that " if a person was *usually* known by several names," it was sufficient to describe him by either. This was entirely correct, and it was fairly implied in the instruction asked by the prisoner. And we do not think such a general remark was sufficient to remove the erroneous impression which the refusal of that instruction, and the previous statement that it was sufficient to describe the deceased by any name by which he had been known, were calculated to leave upon the minds of the jury.

The conviction must be set aside, and a new trial ordered.